IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TALIB ZAYID, | ) | CASE NO. 1:13-CV-54 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Talib Zayid's, ("Plaintiff" or "Zayid") applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II[1] of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On July 20, 2007, Zayid filed applications for Supplemental Security Income benefits and Disability Insurance benefits. (Tr. 12, 106-07, 212). Plaintiff alleged he became disabled on

---

[1] Zayid's Title II claim for Disability Insurance benefits was made for the purpose of establishing eligibility for Medicare coverage as a Medicare-qualified government employee. (Tr. 106). *See* 20 C.F.R. § 404.1018b. To be eligible for Medicare coverage, the claimant must prove he was disabled during the period of time for which he had insured status for Medicare eligibility purposes. *See* 20 C.F.R. §§ 404.130, 404.131, and 404.315. The ALJ found that Zayid had insured status for Medicare coverage purposes through September 30, 2008. (Tr. 15).

1

November 1, 2006, due to suffering from hepatitis C. (Tr. 212, 215, 263). The Social Security Administration denied Zayid's applications on initial review and upon reconsideration. (Tr. 129-34, 143-48). Following a January 5, 2010 hearing, administrative law judge ("ALJ") Kendra Kleber found Plaintiff was not disabled in a decision dated January 6, 2010. (Tr. 63, 113-20). The Appeals Council of the Office of Disability Adjudication and Review granted Zayid's request for review of the ALJ's decision, vacated the ALJ's decision, and remanded the case for further administrative proceedings. (Tr. 126-28).

On August 24, 2011, the ALJ convened a second administrative hearing to evaluate Plaintiff's application. (Tr. 28-62). Zayid, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE"), Thomas Nimberger, and also appeared and testified. (*Id.*). On September 9, 2011, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 12-22). After applying the five-step sequential analysis,[2] the ALJ determined

---

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

Zayid retained the ability to perform work existing in significant numbers in the national economy. (*Id.*).  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council and provided additional medical records in support of his request for review. (Tr. 8, 545-630).  The Appeals Council denied Zayid's request, making the ALJ's September 9, 2011 determination the final decision of the Commissioner. (Tr. 1-7).  Plaintiff now seeks judicial review of the ALJ's decision.  Review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Zayid was born on July 23, 1951, and was 56 years old on the date his applications were filed. (Tr. 106).  Accordingly, he was considered a "person of advanced age" for Social Security purposes.  *See* 20 C.F.R. §§ 416.963, 404.1563.  Plaintiff completed high school. (Tr. 54).  He has past work experience as a clean-up worker and routine office worker. (Tr. 20, 51-52).

### B. Medical Evidence

While undergoing a blood transfusion during surgery as a child, Zayid contracted hepatitis C, a disease which affects the liver. (Tr. 431).  Plaintiff's hepatitis was asymptomatic. (Tr. 499).  In March 2007, Plaintiff began treatment to cure the disease at MetroHealth Medical Center ("MetroHealth"). (Tr. 366-67).  Gastroenterologist Jamile Wakim-Fleming, M.D., examined Zayid during March and May 2007. (Tr. 366-73).  During these visits, Zayid complained of fatigue but denied depression and anxiety. (Tr. 366, 371).  Dr. Fleming noted gallstones, a normal liver, mild elevation of liver enzymes, and Zayid's refusal of a liver biopsy. (Tr. 372).

---

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

3

Zayid began Interferon therapy (daily vaccination injections) for hepatitis C in June 2007. (Tr. 374). Elke Burns, R.N., reported that Plaintiff was attentive, learned quickly, and demonstrated proper injection technique. (*Id.*). During a follow-up visit on June 27, 2007 after his first two injections, Plaintiff indicated to Ms. Burns that he was experiencing the side effects of the Interferon therapy, explaining the treatment made him feel as though he had been "run over by a truck." (Tr. 375). He also felt that he could not perform his job as a machine operator and had quit. (*Id.*). Though Zayid complained of intermittent, mild depression, Ms. Burns observed that he was alert and oriented, pleasant, and cooperative. (*Id.*). She noted Zayid had a reduced attention span and was not able to read and focus for a long period of time. (*Id.*).

From July to October 2007, Plaintiff attended monthly follow-up visits with Ms. Burns to monitor his Interferon therapy. (Tr. 377-529). Plaintiff's primary complaint was of fatigue with an indication of depression and intermittent nausea and vomiting in July. (Tr. 377, 379). Zayid reported taking Zoloft around the beginning of July. (Tr. 377). During these consultations, Ms. Burns described Zayid as alert and oriented, pleasant, smiling, and having good eye contact. (Tr. 377, 379, 424, 529). Plaintiff reported that friends were supporting him during treatment. (Tr. 377). In August 2007, Zayid said he had recently quit his job as a truck driver and had a decreased appetite. (Tr. 421). Also that month, attending physician Kevin Mullen, M.D., noted Zayid was having significant symptoms from his treatment including fatigue and weight loss, and indicated the need to closely monitor Zayid. (Tr. 422). In September 2007, Plaintiff indicated various flu-like symptoms. (Tr. 424).

In November 2007, Plaintiff elected to have his gallbladder removed and a liver biopsy. (Tr. 433-36). One month after the surgery, Plaintiff's surgeon noted no complications and recommended Zayid resume normal activities with no restrictions. (Tr. 437). Zayid reported no

4

pain, no symptoms, and eating normally. (*Id.*). Plaintiff treated with Ms. Burns at the beginning of December 2007, and reported fatigue, lightheadedness, chills, poor appetite, and abdominal soreness. (Tr. 533). He also complained of depression and a lack of social support. (*Id.*). Ms. Burns observed Zayid as alert and oriented, but looking fatigued and having a somewhat flat affect. (*Id.*). Dr. Mullen noted that Plaintiff had made a remarkably quick recovery in many respects from surgery, but was still fatigued. (Tr. 535). Due to a lack of responsiveness, Plaintiff's providers stopped Interferon treatment on December 27, 2007 after six months of treatment. (Tr. 452).

Zayid presented to Dr. Fleming in July 2008 for continued management of hepatitis C. (Tr. 518). Plaintiff indicated he was tired, but denied depression and anxiety. (*Id.*). Dr. Fleming noted the six month vaccination treatment produced no response in eliminating Zayid's hepatitis C and he was not currently a candidate for additional hepatitis treatment. (Tr. 519). Dr. Fleming recommended follow-up in one year or as needed. (*Id.*). At this time, the doctor also completed a "Hepatitis C Residual Functional Capacity" form. (Tr. 499-505). Dr. Fleming reported last seeing Plaintiff in May 2007. (Tr. 499). She diagnosed Plaintiff with asymptomatic hepatitis C, advanced liver disease, and pre-cirrhosis of the liver. (*Id.*). The prognosis was fair to good. (*Id.*). Dr. Fleming listed Zayid's symptoms, including chronic fatigue, difficulty concentrating, weakness, loss of appetite, anemia, and sleep disturbance. (*Id.*). The doctor also opined that "as a rule the degree of [the patient's] fatigue does not correlate with the severity of hepatitis C or with the degree of elevation of laboratory tests." (*Id.*). When answering how often during a workday Zayid's symptoms would be severe enough to interfere with attention and concentration needed to perform even simple work tasks, Dr. Fleming wrote "he states he may have one good day in a week." (Tr. 500). Dr. Fleming also noted that she was a "liver doctor," was unable to

assess Plaintiff's physical capabilities, and may refer Zayid to occupational therapy. (*Id.*). Even so, she opined that Plaintiff could rarely lift ten pounds; never climb ladders; rarely twist or climbs stairs; and occasionally stoop, crouch, and squat. (Tr. 501). The form also indicated that Plaintiff's fatigue would cause the need for unscheduled breaks. (*Id.*). The doctor concluded that Zayid would miss about four days of work per month. (Tr. 502).

In October 2008, Plaintiff sought treatment at Northeast Ohio Neighborhood. (Tr. 523). He complained of all over body pain and weakness. (*Id.*). The provider observed Zayid as neat and pleasant, with an appropriate affect and speech, but assessed major depression. (*Id.*). Plaintiff was open to counseling but preferred to wait before taking an anti-depressant. (*Id.*).

Based on the record, it appears that Plaintiff did not seek medical treatment for around two years. On August 4, 2011, Tina Oney, A.P.R.N. (Advanced Practice Registered Nurse), completed a "Medical Source Statement of Ability to Do Work-Related Activities" ("Medical Source Statement"), which addressed Plaintiff's mental limitations. (Tr. 542-44). It is unclear whether Ms. Oney performed an in-person examination of Plaintiff; however, the information provided on her form implies that she conducted an examination.[3] Additionally, during the hearing, Defendant testified that he had seen Ms. Oney for treatment on one occasion. (Tr. 45). On the Medical Source Statement, Ms. Oney reported no marked or extreme limitations. (Tr. 542). She indicated that Plaintiff had moderate limitations in understanding and remembering simple and complex instructions and in making judgments on complex work-related decisions. (*Id.*). Ms. Oney opined that Plaintiff had mild limitations in the ability to make judgments on simple work-related decisions and to carry out complex instructions. (*Id.*). Identifying factors

---

[3] Defendant notes that Ms. Oney examined Plaintiff on July 29, 2011, a few days before she completed the Medical Source Statement. Notes discussing this evaluation were not included in the record before the ALJ, but were part of the additional evidence submitted to the Appeals Council. (Tr. 625-27).

6

that supported these limitations, Ms. Oney wrote: "[d]epressed mood and feels as if he will die. He has anger issues. He also reports he can see 'visions' and events before they happen. He has a very low energy level from medical problems." (*Id.*). Concluding the report, Ms. Oney indicated no limitations in Plaintiff's ability to interact with the public, supervisors, and coworkers, or in his ability to respond appropriately to usual work situations and changes in routine work setting. (Tr. 543).

### C. Agency Reports and Assessments

In August 2007, state agency reviewer, Frank Orosz, Ph.D., examined Plaintiff's medical records to assess his mental impairments. (Tr. 382-94). Dr. Orosz opined that Plaintiff had no limitations in activities of daily living and maintaining social functioning. (Tr. 392). He also stated Zayid experienced no episodes of decompensation. (*Id.*). The doctor indicated that Plaintiff had mild difficulties in maintaining concentration, persistence, or pace. (*Id.*). Dr. Orosz concluded that Zayid's affective disorder was not a severe impairment. (Tr. 394). After conducting an independent review and noting that Plaintiff did not report a worsening of mental symptoms, Suzanne Castor, Psy.D., affirmed Dr. Orosz's findings in February 2008. (Tr. 496).

In September 2007, state agency physician, Linda Hall, M.D., reviewed Plaintiff's medical records and conducted a physical residual functional capacity ("RFC") assessment. (Tr. 396-403). Taking Zayid's allegations of fatigue into consideration, Dr. Hall opined that Zayid maintained the ability to lift fifty pounds occasionally, lift twenty-five pounds frequently, stand or walk for at least six hours in an eight hour day, sit for at least six hours, and was unlimited in his ability to push or pull. (Tr. 397). Diane Manos, M.D., agreed with Dr. Hall's assessment after conducting her own review of the record in February 2008. (Tr. 497).

### III. THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Mr. Zayid meets the insured status requirements of the Social Security Act through September 30, 2008.

2. Mr. Zayid has not engaged in substantial gainful activity since November 1, 2006, the alleged onset date.

3. Mr. Zayid has the following severe impairment: hepatitis C.

4. Mr. Zayid does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that Mr. Zayid has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c) with the following additional limitations: no more than occasional climbing of ladders or scaffolds.

. . .

7. Mr. Zayid is capable of performing his past relevant work as a cleanup worker and routine office worker. This work does not require the performance of work-related activities precluded by Mr. Zayid's residual functional capacity.

8. Mr. Zayid has not been under a disability, as defined in the Social Security Act, from November 2, 2006, through the date of this decision.

(Tr.15-21) (internal citations omitted).

### IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff alleges fault with the ALJ's finding at step two of the sequential analysis and in the ALJ's evaluation of the medical opinions of record. For the following reasons, the undersigned finds that Plaintiff's arguments lack merit.

9

### A. The ALJ's Step Two Finding

Zayid argues that the ALJ erred at step two of the sequential analysis on a number of grounds. First, Plaintiff maintains that the ALJ should have explained why she found Plaintiff suffered from a severe mental impairment in her first decision, issued in January 2010, but not in her September 2011 decision, which is the subject of this appeal. In addition, Plaintiff alleges the ALJ should have addressed why the residual functional capacity determination in her first decision included the non-exertional limitations of simple tasks with only occasional contact with the public or co-workers and her second RFC did not.

Contrary to Plaintiff's allegation, the ALJ did not find that Plaintiff suffered from a severe mental impairment in her January 2010 decision. The ALJ's January 2010 decision contains a typographical error. The heading that describes the ALJ's step-two finding incorrectly states that anxiety was a severe impairment. (Tr. 115). In the body of the decision, the ALJ noted that Zayid's anxiety was "nonsevere" and explained why Plaintiff's anxiety did not meet the requirements to constitute a severe impairment under 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). (Tr. 115-16).

Furthermore, Plaintiff acknowledges that *Drummond v. Commissioner of Social Security* is inapplicable in this case because the Appeals Council vacated the ALJ's 2010 decision. (Tr. 125-28). In *Drummond*, which resulted in the Social Security Administration issuing Acquiescence Ruling 89-4(6), the Sixth Circuit held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). However, "it is axiomatic that a decision vacated by the Appeals Council has no *res judicata* effect," making *Drummond* inapplicable in such cases. *Williams v. Astrue*, 3:10-CV-2354, 2012 WL 892544 at *6 (N.D.

10

Ohio Mar. 14, 2012). Here, the ALJ was not bound by her prior decision, and Plaintiff does not point to case law indicating that the ALJ was required to justify any alleged discrepancies among the RFC findings in her decisions. Thus, this argument lacks merit.

Next, Zayid contends that the ALJ erred by failing to consider new evidence from MetroHealth, which he alleges supports a finding that he suffered from a severe mental impairment.[4] (Tr. 545-630). When the Appeals Council considers new evidence that was not before the ALJ, but declines to review a claimant's application on the merits, the district court cannot consider that evidence for the purpose of substantial evidence review. *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001) (*citing Cline v. Comm'r of Social Security,* 96 F.3d 146, 148 (6th Cir.1996)). The district court may consider whether remand is necessary for further administrative proceedings in light of new evidence pursuant to 42 U.S.C. § 405(g). *Id.* This is often referred to as a sentence six remand. For remand to be proper, the Plaintiff must show that the evidence is new, material, and good cause exists for failure to present the evidence before the ALJ. *Id.* In the present case, the evidence from MetroHealth describing Plaintiff's treatment between January 2011 and July 2011 was not before the ALJ, and the Appeals Counsel denied review after accounting for the new evidence. (Tr. 1-5). Therefore, the undersigned cannot consider the evidence when determining whether to uphold the ALJ's decision. Beyond labeling the evidence as "new and material," Plaintiff makes no arguments in support of a sentence six remand. As a result, the Court will not address whether remand on this ground is warranted. *See McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a

---

[4] Plaintiff notes that the ALJ agreed to consider addition evidence in his case. (Pl. brief at 2). During the hearing, the ALJ stated that if Plaintiff's counsel submitted additional evidence before she signed her decision, she would take the evidence into consideration. (Tr. 61). Plaintiff concedes that his counsel did not receive the new MetroHealth evidence until the day that the ALJ issued her decision, which was a little over two weeks after the administrative hearing. Thus, Plaintiff failed to submit the evidence to the ALJ before she rendered her decision. (Pl. brief at 2).

perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

Lastly, Zayid alleges that the ALJ should have referred him for a consultative examination in order to properly develop evidence of his mental impairments. However, the "ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster*, 279 F.3d at 355 (*citing* 20 C.F.R. §§ 404.1517, 416.917). The regulations *permit*, but do not demand, that the ALJ seek such evidence when there is not sufficient medical evidence in the record to allow the ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1517, 416.917. Here, sufficient medical evidence existed in the record for the ALJ to evaluate Zayid's mental condition. The ALJ fully reviewed Plaintiff's medical records, including opinions from providers while he underwent Interferon treatment, records from a mental health examiner, and opinions from state agency physicians, which did not support a finding of a severe mental impairment. Plaintiff does not explain how failing to obtain such additional evidence caused him prejudice, and at this point in the sequential analysis, he bears the burden to prove disability. *See Foster*, 279 F.3d at 353-54. Thus, the undersigned finds no error on this ground.

Despite Plaintiff's allegations, substantial evidence exists to support the ALJ's conclusion that Zayid's mental impairment was not severe. The regulations provide that when evaluating the severity of mental impairments, the ALJ is to rate the degree of functional limitation an individual experiences as a result of the impairment in the following four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). If the ALJ rates the degree of

limitation in the first three areas as "none" or "mild" and in the fourth area as "none," the ALJ may conclude that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work actives." *Id.*

In the present case, the ALJ found that Zayid's affective disorder did not cause more than minimal limitation. (Tr. 16). The ALJ noted that Zayid experienced some symptoms of depression once he started Interferon treatment, but that the depression was described by medical providers as a "drug induced mood disorder." (Tr. 16, 380). The ALJ then properly addressed the four functional mental areas set forth in the regulations. Based on the record evidence, the ALJ found that as a result of his mental impairment, Zayid had no limitations in performing activities of daily living; no limitations in social functioning; mild limitations in concentration, persistence, or pace; and no evidence of episodes of decompensation of extended duration. (Tr. 16-17). The ALJ's basis for these findings is evidenced in the record. The ALJ also noted that Drs. Orosz and Castro opined that Zayid's mental impairment was not severe. Thus, the undersigned concludes that substantial evidence supports the ALJ's determination on this issue.

## B. Medical Opinion Evidence

Zayid argues that the ALJ erred because she granted greater weight to the opinions of non-examining physicians Drs. Orosz and Castro over the opinions of Ms. Oney and Dr. Fleming, who examined Zayid. In part, Plaintiff's argument is logically flawed. Drs. Orosz and Castro evaluated Plaintiff's mental RFC, while Dr. Fleming assessed Plaintiff's physical capabilities. As a result, the ALJ did not weigh Dr. Fleming's opinions against Drs. Orosz and Castro's. Nevertheless, the undersigned will review whether the ALJ appropriately addressed Dr. Fleming's opinions.

Generally, more weight is given to the opinions of examining medical sources than to non-examining medical sources. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Even so, the Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are "highly qualified" and are "experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Thus, in the present case, it was not improper for the ALJ to attribute great weight to the opinions of state non-examining physicians, even though these doctors did not perform a physical examination. Additionally, the ALJ gave sufficient reasons for not fully crediting the opinions of examining physicians, as will be further discussed herein.

### 1. Ms. Oney

Plaintiff's argument that the ALJ should have granted Ms. Oney's opinions greater weight is not well taken. Only opinions from particular sources can establish the existence of an impairment or be given controlling weight. 20 C.F.R. §§ 404.1513(a), 416.913(a); SSR 06-03p ("only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight"). These sources are labeled as "acceptable medical sources," and generally refer to licensed physicians, psychologists, optometrists, podiatrists and pathologists. 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5). Although nurses do not fall under the regulations' definition of an acceptable medical source, an ALJ should consider evidence from nurses and other medical professionals because such evidence may provide information regarding the severity of a claimant's impairment. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p; *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007). Furthermore, Social Security Ruling 06-03p expressly confirms that the factors

set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c) apply to opinion evidence from "other sources." SSR 06-03p. These factors include: the length of the treatment relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other factor which may support or contradict the opinion. *Id*.

Taking into account the factors set out in the regulations, the ALJ gave sufficient reasons for not fully crediting Ms. Oney's opinions. As the ALJ indicated, Ms. Oney is a registered nurse and therefore not an "acceptable medical source." Consequently, her opinions are not afforded special deference. Additionally, the ALJ explained that the record evidence before her did not clearly indicate whether Ms. Oney performed an in-person examination of Plaintiff. Even so, the ALJ gave Plaintiff the benefit of the doubt that Ms. Oney examined Plaintiff before completing her Medical Source Statement, and Plaintiff testified that he treated with Ms. Oney on one occasion. (Tr. 45). Thus, the Court will assume that Ms. Oney was a one-time examiner. It is well-settled that the opinions of a one-time examining physician are not entitled to any special level of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The ALJ also noted that Ms. Oney's findings of moderate limitations were inconsistent with other objective medical evidence. Dr. Orosz found only mild difficulties maintaining concentration, persistence, and pace, with no other limitations. Dr. Castro affirmed Dr. Orosz's evaluation. In addition, the ALJ reasonably found that Ms. Oney's Medical Source Statement indicated that her support for these limitations was not objective evidence, but Plaintiff's subjective complaints, which were not clearly documented in treatment records. (Tr. 542). *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (medical report

properly rejected where findings were based on claimant's subjective complaints); *Thomas v. Comm. Soc. Sec.*, 2004 WL 1559535 at \*717 (6th Cir. July 9, 2004) (unpublished) (examining physician's opinion properly rejected where opinion was partially based on claimant's subjective complaints, which were not supported by objective medical findings).  Thus, substantial evidence supports the ALJ's evaluation of Ms. Oney's opinion.

### 2. Dr. Fleming

An ALJ must give special attention to the findings of the claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  This doctrine, often referred to as the "treating source rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).  The treating source rule indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not entitled to controlling weight under this framework, the ALJ must determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. 20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6).  The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions. *Id.*  An ALJ's failure to adhere to this doctrine may necessitate remand. *Wilson*, 378 F.3d at 545.

In the present case, the ALJ did not give controlling weight to Dr. Fleming's opinion and provided good reasons for her decision.  First, the ALJ noted that Dr. Fleming filled out the RFC

16

form about one year after her last examination of Zayid. (Tr. 19, 499). The ALJ also explained that on the form, Dr. Fleming indicated she was Zayid's "liver doctor," was "unable to assess his physical condition," and may refer Zayid to occupational therapy, but then, despite these admissions, she proceeded to provide her opinion on Zayid's physical limitations. (Tr. 500). *See* 20 C.F.R. §§ 416.927(c)(5), 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Finally, the ALJ noted that the evaluation did not comport with other record evidence. For example, state non-examining reviewer Dr. Hall found Zayid could perform medium work, and Dr. Manos affirmed Dr. Hall's evaluation. Thus, the ALJ adequately complied with the applicable treating source analysis and substantial evidence supports the ALJ's decision to assign limited weight to Dr. Fleming's opinion.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: November 19, 2013.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objective has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).